[Civ. No. 9738. First Appellate District, Division Two.—June 27, 1935.]

LOUIS CARABELLI, Respondent, v. MOUNTAIN STATES LIFE INSURANCE COMPANY et al., Appellants.

Philip O. Solon for Appellants.

J. E. Hood and D. W. Brobst for Respondent.

SPENCE, J.—Plaintiff brought this action upon an insurance policy seeking to recover the sum of $1650 claimed to be due for "confining illness" benefits for 22 months at the rate of $75 per month. Upon a trial by jury, plaintiff had judgment as prayed, from which judgment defendants appeal.

The pertinent provisions of the insurance policy were as follows:

"Confining Illness. The Company will pay at the rate of $75.00 per month for disability resulting from disease, the

cause of which originates more than fifteen days after the date of this policy, and which confines the Insured continuously within doors and requires regular visits therein, at least once in every seven days, by a legally qualified physician, provided said disease necessitates total disability and total loss of time and provided that no indemnity will be paid for the first seven days of such disability.''

''Non-Confining Illness. The Company will pay at the rate of $75.00 per month for the first month, and $37.50 per month for the next two months, for disability resulting from disease, the cause of which originates more than fifteen days after the date of this policy and which does not confine the Insured continuously within doors, but requires regular visits, at least once every seven days, by a legally qualified physician, provided said disease necessitates total disability and total loss of time, and provided that no indemnity will be paid for the first seven days of such disability, unless such nonconfining illness shall immediately follow confining illness, indemnity for which is payable hereunder.''

On April 15, 1930, and while said policy was in force, plaintiff suffered a paralytic stroke which confined him to a hospital for a time and thereafter confined him to his home for a further period of time. The insurance company made regular payments of $75 per month to plaintiff until February, 1932, upon the assumption that plaintiff had been confined continuously within doors during all of that period. About the time the last payment was made, plaintiff was seen walking alone and unassisted at a point some distance from his home. An investigator was thereafter sent to plaintiff's home and when he arrived plaintiff was out. He waited for 20 or 25 minutes and then observed plaintiff walking down the street returning to his home. Some conversation was had on that day concerning plaintiff's condition and the investigator returned on another day and had a further conversation with plaintiff. The investigator explained the provisions of the policy relating to confining and nonconfining illness and tendered plaintiff a draft for $150 which was claimed by the insurance company to be the full balance due to plaintiff under the terms of the policy relating to nonconfining illness. Plaintiff refused to accept the draft covering the nonconfining illness benefits and thereafter commenced this action seeking to recover benefits under the confining illness clause.

There is no dispute concerning the material facts. It appears that during the time in question, plaintiff was able to get around and regularly took extended walks away from his home upon the advice of his physician. It further appears that plaintiff's doctor did not visit plaintiff in his home at least once in every seven days during this period but that plaintiff had gone to the doctor's office alone on 16 to 20 occasions. On one occasion the doctor took a trip of five weeks' duration during which time he did not see plaintiff at all.

Upon these undisputed facts appellants contend that the evidence is insufficient to support the verdict and judgment. In our opinion this contention must be sustained. Respondent was entitled to the confining illness benefits only in the event of illness *"which confines the Insured continuously within doors and requires regular visits therein,* at least once in every seven days, by a legally qualified physician". (Italics ours.) The evidence offered on behalf of respondent affirmatively showed that during the period in question his illness did not confine him continuously within doors and that it did not require regular visits therein by a physician. It was therefore insufficient.

Respondent lays great stress upon the fact that he was totally disabled and suffered a total loss of time during this period. This is conceded by appellants but is immaterial in the solution of the question before us. It will be noted that under the terms of the policy respondent would not be entitled to either the confining illness benefits or the nonconfining illness benefits unless the disease "necessitates total disability and total loss of time". Respondent brought his action to recover the confining illness benefits and the only question here is whether his evidence was sufficient to show that he was confined "continuously within doors" and required "regular visits therein" at least once in every seven days by a physician.

The general rule is that an insured must bring himself within the express terms of the policy before he is entitled to recover thereon and where these terms are plain and explicit, the courts cannot create a new contract for the parties by a forced construction of such plain and explicit terms. Thus the rule of liberal construction in favor of the insured can only have application when the policy presents some uncertainty or ambiguity. (*Ogburn* v. *Travelers Ins. Co.,* 207 Cal. 50 [276 Pac. 1004]; *First Nat. Bank* v. *Maryland Cas.*

*Co.*, 162 Cal. 61 [121 Pac. 321, Ann. Cas. 1913C, 1170].)
Respondent seems to suggest that the policy here contained
some uncertainty or ambiguity but we are at a loss to conceive
of how the conditions entitling the insured to either the con-
fining illness benefits or the nonconfining illness benefits could
have been made plainer or more explicit. When respondent
had so far recovered that he was no longer confined continu-
ously within doors and no longer required regular visits
therein by a physician but was able to take extended walks
and to visit his physician rather than have his physician visit
him, it seems entirely clear that his illness was no longer a
confining illness within the meaning of the policy.

The views which we have expressed are in accord with those
found in numerous authorities from other jurisdictions deal-
ing with similar policies. In *Reeves* v. *Midland Casualty Co.*,
170 Wis. 370 [174 N. W. 475], the court held there was no
ambiguity and said at page 476 [174 N. W.], "The indemnity
provisions of the policy recognize two degrees of illness: One,
when the insured is so ill that he is confined within his house
and is therein treated by his physician; the other, when he has
so far recovered that he is able to be outside the house and to
receive treatment from his physician at places other than the
house." Then after discussing the purpose of providing dif-
ferent benefits for these two degrees of illness, the court fur-
ther said on page 477 [174 N. W.], "The premium rate was no
doubt fixed by the character of the liability assumed and, the
company having made use of plain and unambiguous words
prescribing the period of full liability, the court should not
substitute another and different contract for the parties."
(See, also, *Richardson* v. *Interstate Business Men's Acc. Assn.*,
124 Kan. 685 [261 Pac. 565]; *Sheets* v. *Farmers' & Merchants'
Mut. Life & Casualty Assn.*, 116 Kan. 356 [225 Pac. 929];
*Rocci* v. *Massachusetts Acc. Co.*, 222 Mass. 336 [110 N. E.
972, Ann. Cas. 1918C, 529].) Most of the authorities cited by
respondent are distinguishable upon the facts involved, but if
any of respondent's authorities may be said to be contrary to
the authorities above cited, we do not believe they should be
followed.

In view of the conclusion that we have reached with respect
to the insufficiency of the evidence, we deem it unnecessary
to consider the remaining points urged by appellants.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1935.