[Civ. No. 10627. Third Dist. July 11, 1963.]

JEREMY C. COOK, as Coexecutor, etc., et al., Plaintiffs and Respondents, v. THE PENN MUTUAL LIFE INSURANCE COMPANY, Defendant and Appellant.

(Consolidated Cases.)

McCutchen, Doyle, Brown & Enersen, McCutchen, Doyle, Brown, Trautman & Enersen, Walker Lowry and Richard Murray for Defendant and Appellant.

Jeremy C. Cook, in pro. per., and J. Hilary Cook for Plaintiffs and Respondents.

SCHOTTKY, Acting P. J.—Plaintiffs as executors of the estate of Ruth E. Cook commenced two separate actions against The Penn Mutual Life Insurance Company to compel payment of certain sums they claimed were owing to them under the terms of two life insurance policies. The actions were consolidated for trial and the trial court found in favor of plaintiffs in each case and entered judgments from which defendant appeals.

The record shows that William Coburn Cook was insured by appellant under two insurance policies in which his wife, Ruth E. Cook, was named as payee. Since the policies are substantially identical, we will treat them as one policy. The policy provided that on the insured's death the

payee could elect to receive monthly payments pursuant to any one of several options in lieu of a lump sum settlement. "Option C" of the policy provided that the proceeds could be made payable as "An income for ten years certain and thereafter during the life of the Payee, terminating, after the certain period, with the last payment preceding death." The amount of monthly income would be determined from tables set out elsewhere in the policy.

To provide for disposition of the payee's interest in the event of her death the policy contained a clause entitled, "Death of Payee," stating:

"Upon the death of the Payee the commuted value of income payments still to become due under Option A, of income payments still to become due during the certain or refund period under Option B, C or FR, or the balance of Proceeds then held under Option D or E, with accrued interest, shall be paid in one sum to the executors or administrators of the Payee unless otherwise provided in the election and consented to by the Company."

William Coburn Cook died in October 1953 and Ruth Cook became entitled to a lump sum death benefit in the amount of $8,321.27 under the policy. However, Ruth preferred to take the proceeds as a monthly income pursuant to the terms of "Option C." Therefore, Ruth and appellant executed a settlement statement agreement which was specifically made subject to the terms of the insurance policy and which reiterated the various payment options. Ruth elected "Option C" which gave her a monthly income of $36.54 in lieu of the lump sum payment. A clause of the settlement statement entitled, "Payment to Contingent Payees upon or after Death of Payee," gave the payee the right to determine the disposition of her interest on her death. There were several alternative methods of payment, depending on the option in force on the payee's death for the applicability of each. Ruth Cook selected the alternative which provided that the unpaid balance of principal and any accrued interest or the commuted value of installments certain not yet due at the time of her death be paid in one sum to the executor or administrator of her estate. Ruth Cook died on September 28, 1960, prior to receiving the guaranteed minimum of payment for 10 years. Pursuant to the "Death of Payee" clause and the settlement statement, appellant paid respondents $1,246.24, which was the commuted value of the income payments to become due during the remainder of the 10-year period.

Respondents, however, were not satisfied with this payment. They claimed the settlement statement clause providing the unpaid balance of principal and any accrued interest or the commuted value of installments certain not yet due at the time of death be paid in one sum to the executor or administrator of the estate of the payee entitled them to elect to receive the difference, plus interest, between $8,321.27 and the amount paid to Ruth Cook during her lifetime instead of the commuted value of refund payments. Appellants brought suit to enforce their claim. The trial court found that the settlement statement clause created an ambiguity in the insurance contract and allowed respondents to enforce their claim.

Appellant's sole contention on this appeal is that the policy and settlement statements are unambiguous as a matter of law and limit the liability to the commuted value of the refund payments. With this contention we agree.

In the case of *New York Life Ins. Co.* v. *Hollender,* 38 Cal. 2d 73 [237 P.2d 510], the court said at page 81:

"In construing life insurance policies as in the construction of other contracts, the entire contract is to be construed together for the purpose of giving force and effect to each clause. (44 C.J.S. p. 1136, § 289; p. 1196, § 298; Civ. Code, § 1641; *Ogburn* v. *Travelers Ins. Co.,* 207 Cal. 50, 52-53 [276 P. 1004]; *Security Trust & Sav. Bank* v. *New York Indem. Co.,* 220 Cal. 372, 377 [31 P.2d 365].) While it is settled law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer (44 C.J.S. p. 1166, § 297c(1); *Fageol Truck & Coach Co.* v. *Pacific Indem. Co.,* 18 Cal.2d 731, 747 [117 P.2d 661]; *Mutual Life Ins. Co.* v. *Margolis,* 11 Cal.App.2d 382, 387-388 [53 P.2d 1017]), the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed (44 C.J.S. p. 1190, § 297c(2); *Burr* v. *Western States Life Ins. Co.,* 211 Cal. 568, 576 [296 P. 273]). . . ."

 And as stated in *Protex-A-Kar Co.* v. *Hartford Accident etc. Co.,* 102 Cal.App.2d 408 [227 P.2d 509], at page 413:

". . . Each clause of the contract must be considered with reference to every other clause upon which it has any bearing and all the provisions are to be construed together for the purpose of ascertaining the intent of the parties. (*Burr* v.

*Western States Life Ins. Co.*, 211 Cal. 568, 575 [296 P. 273].)''

If we view the settlement statement clause in the case at bench by itself there may appear to be an ambiguity. But we must view the policy and the settlement agreement as a whole and give each clause meaning as is required by the applicable rules of law, and when we do so all ambiguity vanishes. Where, as here, the payee selects ''Option C,'' the ''Death of Payee'' clause unequivocally limits the amount owing to a deceased payee's heirs to the commuted value of payments to become due during the refund period. In view of the ''Death of Payee'' clause, the settlement statement clause merely determines the person entitled to payment on the payee's death. The right to make such a choice is given to the payee in the ''Death of Payee'' clause. The settlement statement clause does use the word ''or'' between ''principal'' and ''commuted value;'' but it does not give respondents a choice between principal and commuted value. It is obvious that the word ''or'' was used in recognition of the fact that, depending on the option selected, either principal or commuted value, but not both, would be owing on the death of the payee.

Respondents contend that this court is bound by the trial court's interpretation of the policy. This contention cannot be sustained. As stated in *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13], at page 133:

''. . . In construing a contract, the question whether an uncertainty or ambiguity exists is one of law, and the lower court's finding on this issue is not binding on appeal. . . .''

As hereinbefore stated, we have concluded that there was no ambiguity in either policy and that the trial court erred in holding that respondents were entitled to the difference, plus interest, between $8,321.27 and the amount paid to Ruth Cook during her lifetime instead of the commuted value of the refund payments.

The judgments are reversed with directions to enter judgment in favor of appellant in each of the consolidated cases.

Friedman, J., and Janes, J. pro tem.,* concurred.

A petition for a rehearing was denied July 30, 1963, and respondents' petition for a hearing by the Supreme Court was denied September 4, 1963.

---

*Assigned by Chairman of Judicial Council.